# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| D. H. PACE COMPANY, INC., d/b/a Overhead Door Company of Atlanta, | CIVIL ACTION NO. 1:17-cv-03430-MHC |
|    Plaintiff, | DEMAND FOR JURY TRIAL |
| v. | |
| AARON OVERHEAD DOOR ATLANTA LLC, JEREMY RYAN LUCIA, and STEPHENIE LUCIA, | |
|    Defendants. | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

R. Charles Henn Jr.
Georgia Bar No. 347098
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
(404) 815-6500
(404) 815-6555 (fax)
chenn@kilpatricktownsend.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.    Introduction....................................................................................................1

II.   Undisputed Facts ............................................................................................3

    A.    The Atlanta Distributor Agreement Grants Rights to Pace..................3

    B.    Pace Has a Long History of Enforcing its Trade Name Rights ............4

    C.    The 2010 Common Interest Agreement Reflects Pace's Independent Rights to Enforce its Trade Name and Stop Unfair Competition ........5

    D.    ODC Approved Of Pace's Action Against Defendants .......................7

    E.    ODC Financially Supported Pace's Action Against Defendants..........9

    F.    The 2019 Common Interest Agreement Reflects Pace's Independent Rights to Enforce its Trade Name and Stop Unfair Competition .......10

III.  Legal Standard for Summary Judgment .......................................................11

IV.   Argument ......................................................................................................11

    A.    Pace Has a Statutory Right to Bring Unfair Competition Claims ......11

    B.    Pace's Statutory Rights Are Not Limited or Eliminated by The Distributor Agreement.......................................................................13

    C.    Pace Has Express and Contractual Authority to Pursue its Claims ....18

        1.    ODC's Authorization Moots the "Contractual Authority" Issue19

        2.    Pace and ODC's Subsequent Mutual Agreement Modified the Contract to Grant Pace Enforcement Rights............................20

    D.    Material Differentiating Facts Prevent this Court from Giving Judge Batten's Decision in the *OGD* Case Preclusive Effect ......................23

V.    Conclusion ...................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adidas Am., Inc. v. Athletic Propulsion Labs, LLC*,
   No. 3:16-cv-00415-HZ, 2016 WL 3896826 (D. Or. July 18, 2016) .................. 12, 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................... 11

*Argos USA LLC v. Young*,
   No. 1:18-CV-02797-ELR, 2019 WL 4125968 (N.D. Ga. June 28, 2019) ............... 18

*Bd. of Supervisors of LA State Univ. v. Smack Apparel Co.*,
   438 F. Supp. 2d 653 (E.D. La. 2006), *aff'd*, 550 F.3d 465 (5th Cir. 2008) ............. 12

*Bearden v. E.I. du Pont de Nemours & Co.*,
   945 F.3d 1333 (11th Cir. 2019) .......................................................................... 20

*Camreta v. Greene*,
   563 U.S. 692 n.7 (2011) ...................................................................................... 18

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................ 11

*CSX Transp., Inc. v. Bhd. of Maint. of Way Empls.*,
   327 F.3d 1309 (11th. Cir. 2003) .......................................................................... 23

*D.H. Pace Co., Inc. v. OGD Equipment Co., LLC*,
   No. 1:20-cv-410-TCB, 2022 WL 1050692 (N.D. Ga. Mar. 8, 2022) ...............passim

*F.T.C. v. Nat'l Urological Grp, Inc.*,
   785 F.3d 477 (11th Cir. 2015) ............................................................................. 25

*Fin. Inv. Co. (Berm.) Ltd. v. Geberit AG*,
   165 F.3d 526 (7th. Cir. 1998) .............................................................................. 13

*Future Prof'ls, Inc. v. Darby*,
   266 GA 690, 470 S.E.2d 644 (1996) .................................................................... 13

*Georgia v. President of the United States*,
  46 F.4th 1283 (11th Cir. 2022) ................................................................. 18

*Gilliana v. Paniaguas*,
  708 N.E.2d 895 (Ind. Ct. App. 1999) ....................................................... 20

*Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*,
  No. 8:06-cv-1790-T-27EAJ, 2006 WL 3755328 (M.D. Fla. Nov. 15, 2006) ........... 15

*Handex of Fla., Inc. v. Chatham County*,
  268 Ga. App. 285, 602 S.E.2d 660 (2004) ................................................. 21

*Hanham v. Access Mgmt. Grp. L.P.*,
  305 Ga. 414, 825 S.E.2d 217 (2019) ......................................................... 20

*Hotaling & Co. v. LY Berditchev Corp.*,
  No. 20-cv-16366, 2021 WL 3783260 (D.N.J. Aug. 26, 2021) ................................. 14

*I.A. Durbin, Inc. v. Jefferson Nat'l Bank*,
  793 F.2d 1541 (11th Cir. 1986) ................................................................. 23

*In re Howard Ave. Station, LLC*,
  No. 8:20-cv-2780-CEH, 2022 WL 4377506 (M.D. Fla. 2022) ................................. 24

*Kay Jewelry Co. v. Kapiloff*,
  204 Ga. 209, 49 S.E.2d 19, 20 (1948) ....................................................... 13

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704 (11th Cir.
  2019) ..................................................................................................... passim

*Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014) 11, 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................ 11

*Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*,
  567 F.2d 154 (1st Cir. 1977) .................................................................... 12

*Shell Co. v. Los Frailes Serv. Station, Inc.*,
  596 F. Supp. 2d 193 (D.P.R. 2008), *aff'd*, 605 F.3d 10 (1st Cir. 2010) .................... 12

*SWL, L.L.C v. NextGear Cap., Inc.*,
   131 N.E.3d 746 (Ind. Ct. App. 2019) ........................................................................21

*Thomas v. Garrett*,
   265 Ga. 395, 456 S.E.2d 573 (1995) ........................................................................20

*Tr Worldwide Phillyfood, LLC v. Tony Luke, Inc*,
   No. 16-1185 (RBK/JS), 2017 WL 396539 (D.N.J. Jan. 30, 2017) ...........................14

*Trane Co. v. Whitehurst Lassen Constr. Co.*,
   881 F.2d 996 (11th Cir. 1989) ..................................................................................16

*Unique Sports Prods., Inc. v. Wilson Sporting Goods Co.*,
   512 F. Supp. 2d 1318 (N.D. Ga. 2007) ....................................................................13

*United Nats., Inc. v. LXR Biotech, LLC*,
   No. 15-14299, 2016 WL 949222 (E.D. Mich. Mar. 14, 2016...................................12

*United States v. Campbell*,
   26 F.4th 860 (11th Cir. 2022), *cert. denied*, No. 21-1468, 2022 WL 4651666 (Oct. 3,
   2022) .................................................................................................................. 15, 16

**Statutes**

15 U.S.C. § 1114 ..........................................................................................................11

15 U.S.C § 1125(a) ...............................................................................................passim

15 U.S.C. § 1127 ....................................................................................................11, 12

O.C.G.A. § 10-1-373(a) ..............................................................................................13

O.C.G.A. § 23-2-55......................................................................................................13

**Other Authorities**

J. Thomas McCarthy,
   5 *McCarthy on Trademarks and Unfair Competition* § 26:27 (5th ed. 2022)..........16

Plaintiff D.H. Pace Company, Inc. ("Pace") respectfully submits this Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment against Aaron Overhead Door Atlanta LLC and Jeremy Ryan Lucia (collectively, "Defendants") on the issue of Pace's standing, including its statutory and contractual authority, to bring the present lawsuit against Defendants.[1]

## I.     Introduction

Defendants' unfair and deceptive trade practices have caused rampant actual confusion among garage door consumers in Atlanta. Defendants' conduct damages Pace by diverting customers and sales, injuring Pace's reputation, and undermining the goodwill that Pace and its predecessors have developed—over nearly a century—in the trade name "Overhead Door Company of Atlanta."

To remedy that damage and to protect consumers from confusion, Pace asserts claims for unfair competition under § 43(a)—not § 32—of the Lanham Act and corresponding state law. The law is clear that Pace has the statutory authority to bring the claims it asserts in this lawsuit, and the factual record is undisputed that Overhead Door Corporation ("ODC") expressly and unequivocally authorized—and is even helping to fund—Pace's litigation against Defendants.

Judge Batten's decision in *D.H. Pace Co., Inc. v. OGD Equipment Co., LLC,*

---

[1] Pace's supplemental motion for summary judgment was authorized by this Court's August 1 Order. Dkt. 281 at 21.

No. 1:20-cv-410-TCB, 2022 WL 1050692 (N.D. Ga. Mar. 8, 2022) ("*OGD*")[2] is not

preclusive because the facts and issues in this case are fundamentally different from

those before Judge Batten in three material respects:

(1) the present case <u>does not involve</u> any settlement agreement between ODC and

the *Aaron*-Defendants that (a) releases ODC's claims, or (b) prevents ODC from

"directing" Pace to bring suit;

(2) the present case <u>includes</u> undisputed and contemporaneous documentary

evidence of ODC's authorization and approval of this lawsuit, including

ongoing and direct financial support; and

(3) the present case <u>includes</u> undisputed evidence that ODC and Pace have long

been parties to written common interest agreements that contemplate Pace

independently litigating unfair competition claims in the Atlanta area, and

reflect Pace and ODC's mutual agreement that Pace is authorized to bring its

unfair competition claims.

For all of these reasons, the Court should grant summary judgment to Pace on

the issue of standing and promptly reset this case for trial, so the public can be

---

[2]Judge Batten's Order is on appeal to the Eleventh Circuit and is fully briefed. As explained in detail in Pace's appeal briefs in that case, Judge Batten misinterpreted and factually misapplied both *Kroma* and the plain language of the ODC-OGD settlement agreement. *D. H. Pace Co., Inc. v. OGD Equip. Co., LLC*, 11th Cir., No. 22-10985 (11th Cir.). It has been set for oral argument during the week of January 23, 2023. *Id.*, Notice on 10/21/22.

protected from Defendants' unfair and deceptive trade practices that have caused

significant actual confusion.

## II.    Undisputed Facts

### A.    The Atlanta Distributor Agreement Grants Rights to Pace

ODC is a manufacturer of high-quality doors and related products and

equipment under the OVERHEAD DOOR® brand, and Pace is the distributor of

ODC's products in the Greater Atlanta Area.[3] Plaintiff's Statement of Undisputed

Material Facts ("SMF") ¶¶ 1-2. Pace and its predecessors-in-interest have been

operating under the trade name "Overhead Door Company of Atlanta" in the Greater

Atlanta Area for more than 80 years. *Id.* ¶ 2.

For decades, Pace has operated pursuant to a written distributor agreement. *Id.* ¶

3 (Pascuzzi Decl. Ex. 1 (the "Distributor Agreement")). The Distributor Agreement

acknowledges that Pace and other distributors "use the name 'OVERHEAD' as a part

of their corporate trade names." *Id.* ¶ 4 (Distributor Agreement at 2). Among other

things, Section III grants to Pace:

> The right to use the name 'Overhead Door Company of Atlanta' and [Pace]
> agrees to conduct its business under such name. [ODC] also grants to [Pace]
> the right to use the Company's marks, including without limitation, the
> trade names 'OVERHEAD DOOR' and 'OVERHEAD', but only on or in
> connection with the sale of products purchased by [Pace] from [ODC] and
> provided that the Distributor first obtains the permission and approval of

---

[3]The "Greater Atlanta Area" refers to the greater metropolitan Atlanta area and
surrounding counties. Dkt. 72 at 1.

[ODC] in writing, both as to the manner and extent of such use of the Company's Marks . . . .

*Id.* (Distributor Agreement § III). Pace's business activities under the Distributor Agreement and doing business as "Overhead Door Company of Atlanta" for over four decades have created valuable goodwill and vested in Pace a meaningful stake in protecting this trade name.[4]

The Distributor Agreement is silent on the issue of enforcing rights in Pace's trade name. ODC did not expressly retain sole enforcement rights; nor did ODC require Pace to provide notice to—much less get permission from—ODC before enforcing against unfair competition in Atlanta. *See, generally*, *id.* (Distributor Agreement). Put another way, nothing in the Distributor Agreement limits or rescinds Pace's statutory rights under § 43(a) of the Lanham Act (or related state laws) to pursue claims of unfair competition.

### B.    Pace Has a Long History of Enforcing its Trade Name Rights

Over the many decades Pace has operated under the "Overhead Door Company

_____

[4]Because the Court's invitation for additional briefing was limited to the issue of standing, Pace will not rehash its arguments to prove goodwill here, but directs the Court to the considerable briefing in the record. *See, e.g.*, Dkt. 84-1 at 9; Dkt. 84-32 ¶¶ 2, 11-12, 14-21, 22-28, 30 (Declaration of John Nale); Dkt. 82 ¶¶ 4-12, Exs. 2-10 (Declaration of Jennifer Fairbairn Deal); Dkt. 281 at 13 ("[b]ased on the evidence of Pace's goodwill and reputation . . . the Court finds that Pace's alleged interests fall squarely within the Lanham Act's zone of protection"). *See also*, *OGD*, 2022 WL 1050692, at * 13 ("Pace has developed a reputation and earned consumer goodwill because of its use of the mark[] in Atlanta . . . .").

of Atlanta" trade name, Pace has often taken action to protect Pace's interests against third parties engaged in unfair competition and attempting to capitalize on Pace's goodwill in the Greater Atlanta Area. *Id.* ¶ 13. Such disputes often are resolved through cease-and-desist letters and direct negotiation between Pace and those companies. *Id.* ¶¶ 14-15. When efforts short of litigation have been unsuccessful, Pace has been compelled to file lawsuits in this Court, asserting unfair competition claims against such companies under both federal and state law. *Id.* ¶ 15.

Pace has engaged in these enforcement actions without ODC co-signing demand letters or being a co-plaintiff in unfair-competition litigation. *Id.* ¶¶ 13-15. Over the decades, ODC has never—*not one time*—objected to Pace's independent enforcement efforts against companies engaged in unfair competition in Atlanta. *Id.* ¶ 16.[5]

### C. The 2010 Common Interest Agreement Reflects Pace's Independent Rights to Enforce its Trade Name and Stop Unfair Competition

Pace and ODC's cordial and longstanding business relationship stems from a mutual interest in the success of Pace's business in the Greater Atlanta Area and in protecting the goodwill of the "Overhead Door Company of Atlanta" trade name. *Id.* ¶

---

[5]Pace regularly informs ODC of its enforcement activities and sometimes confidentially shares information pursuant to a common-interest privilege; therefore, ODC was aware of Pace's enforcement activities and nonetheless did not object. *Id.* ¶ 16.

5.[6] After operating pursuant to an oral common-interest agreement for many years, *id.*
¶ 6, Pace and ODC entered into the first of two written common-interest agreements
regarding the Atlanta market in April 2010. *Id.* ¶ 7 (Pascuzzi Decl. Ex. 2 ("2010
Agreement")). The 2010 Agreement includes the following terms:

- "ODC and [Pace] have a common interest in the protection of these licensed
  trade names and trademarks . . . and thus in unfair competition litigation against
  companies doing business in the Atlanta metropolitan area[, which is defined as
  "Atlanta Unfair Competition Litigation"]," *id.* (2010 Agreement ¶ (A)-(B));
- "[E]ach Party intends to remain independent in the formulation and direction of
  its respective legal strategy, and the Parties acknowledge that this Agreement
  does not constitute a waiver of each Party's individual ownership and right to
  control the work product independently generated by or obtained on the sole
  behalf of such Party," *id.* (2010 Agreement ¶ (D));
- **"[E]ach Party reserves the right . . . to act independently of the other Party
  in** formulating its legal strategy and tactics, responding to the positions of and
  **litigation brought against competitors**, and otherwise pursuing the legal and
  business strategy of its choice," *id.* (2010 Agreement § 8) (emphasis added); and
- "Each Party shall retain the right to engage in separate discussions with any
  Atlanta Unfair Competition Litigation defendant and to enter into any agreement
  with said defendant which said Party believes is in its own interest," *id.* (2010
  Agreement § 11(A)).

The 2010 Agreement reflects the longstanding mutual understanding between
ODC and Pace that Pace has the right to "act independently" to assert unfair
competition claims against "companies doing business in the Atlanta metropolitan
area." *Id*. The 2010 Agreement was in effect at the time Pace filed its Complaint

---

[6]Pace's business success benefits ODC via its purchases of OVERHEAD DOOR
branded products and vests in ODC a shared interest in protecting the integrity of
Pace's "Overhead Door Company of Atlanta" trade name.

against Defendants. *Id*.

**D.    ODC Approved Of Pace's Action Against Defendants**

Pace's communications with ODC about Defendants began at least six months before the Complaint was filed in September 2017. In early 2017, Pace's President, Steve Pascuzzi, communicated to ODC that Pace had become aware of unfair competition in the Atlanta market by an entity doing business as "Aaron Overhead Doors Atlanta." SMF ¶ 17. In March 2017, Pace (on its own) sent a cease-and-desist letter to Defendants, and Mr. Pascuzzi provided a copy of Pace's letter to ODC's Vice President, Mark Sendar. *Id.* ¶ 18.

Pace (without ODC's involvement) engaged in settlement talks with Defendants over the next few months. *Id.* ¶¶ 19, 23. Unfortunately, those talks were unsuccessful and, in July 2017, Pace asked its outside counsel to prepare a memorandum outlining potential litigation against Defendants (including an anticipated budget for the litigation). *Id.* ¶ 21.

Also in the summer of 2017, Mr. Pascuzzi spoke with ODC's then-President and Chief Executive Officer, Dennis Stone, and ODC's Vice President and General Manager, Jamie Byrne, regarding (a) Defendants' advertising on Google and how it was likely to cause confusion with "Overhead Door Company of Atlanta"; (b) the as-yet-unsuccessful settlement negotiations between Pace and Defendants; (c) Pace's plans to initiate litigation if Pace could not achieve a reasonable settlement; and (d) the

- 7 -

amount of financial support Pace might be able to expect from ODC if litigation did move forward. *Id.* ¶ 20. Mr. Stone acknowledged the threat Defendants' conduct posed to Pace's business and told Mr. Pascuzzi that ODC would support Pace if Pace needed to take legal action against Defendants. *Id.*

In August 2017, settlement communications continued between Pace and Defendants, but ultimately proved unsuccessful. *Id.* ¶ 23. Therefore, Pace had its counsel draft a Complaint against Defendants, and on September 8, 2017, Mr. Pascuzzi notified ODC's most senior executives that Pace was moving forward with filing this lawsuit against Defendants. *Id.* ¶ 24 (Pascuzzi Decl. Ex. 4) ("we are filing in Atlanta today")).

At no point during the multiple pre-filing conversations between Pace and ODC did anyone at ODC raise any concerns about or objections to Pace's enforcement of its rights against Defendants, nor suggest that Pace lacked the authority to engage in such enforcement. *Id.* ¶ 25. Moreover, since Pace filed this action, ODC has fully supported and has never objected to Pace's enforcement efforts generally or to this lawsuit against Defendants. *Id.* ¶¶ 26-27. The record on this point is undisputed. ODC's current President and CEO, Kelly Terry, testified unequivocally:

> I agreed to provide ODC's <u>full support</u> in Pace's efforts to enforce its rights in the trade name 'Overhead Door Company of Atlanta' against Defendants in this case. Since that time, ODC has <u>never withdrawn or limited its consent</u> to have Pace enforce its rights in the 'Overhead Door Company of Atlanta' trade name against Defendants.

Dkt. 141-3, ¶¶ 6-7 (emphasis added).

### E.    ODC Financially Supported Pace's Action Against Defendants

At the same time Mr. Pascuzzi informed ODC that Pace was filing a Complaint, he  revisited Pace's request for ODC to contribute financially to the litigation effort, █ ████████████████████████████. SMF ¶ 28 (Pascuzzi Decl. Ex. 4) ("I am requesting [ODC's] ███████████ here as you have done previously.")).[7] Mr. Pascuzzi sent a follow-up email on September 26, asking for confirmation of ODC's financial support of the lawsuit against Defendants. *Id.* ¶ 30. In response, Mr. Terry promptly called Mr. Pascuzzi and confirmed that ODC would financially support Pace in this action against Defendants. *Id*. That telephone call was contemporaneously memorialized in writing in an email to various Pace and ODC executives. *Id.* ¶ 32 (Bailey Decl. Ex. 4) ("Kelly Terry phoned Steve [Pascuzzi] and confirmed that ODC will provide financial assistance . . . .")).

ODC's then-General Counsel Bill Schochet further confirmed (again, in writing) ODC's awareness of the lawsuit *and* its agreement to support it financially: "I was aware of these two matters and I have confirmed with Kelly that he did agree to provide this assistance. As you indicated, the invoices should be e-mailed to my

---

[7]Mr. Pascuzzi's September 8 email, sent pursuant to the common interest agreement, included a copy of Pace's outside counsel's litigation strategy and budget memo. *Id.*

attention for approval and forwarding to accounting to issue the credits." *See id.* ¶ 33 (Bailey Decl. Ex. 4). Since the inception of this litigation, Pace has routinely submitted copies of its law firm's invoices to ODC, which, in response, has provided financial support to Pace ███████████████████████████. *Id.* ¶¶ 34-35.

**F.    The 2019 Common Interest Agreement Reflects Pace's Independent Rights to Enforce its Trade Name and Stop Unfair Competition**

In 2019, after this lawsuit had been pending for over a year, Pace and ODC entered into a second common-interest agreement, materially similar to the 2010 Agreement. *Id* ¶ 9 (Bailey Decl. Ex. 3 ("2019 Agreement")). The 2019 Agreement included the following terms:

- "[T]he Parties and their Counsel wish to pursue their *separate* but joint, mutual, and common interests in the Protection Efforts," *id.* (2019 Agreement at 1) (emphasis added);
- "[Common Interest Materials] shall be used by the Parties and their Counsel only for the purpose of . . . prosecution . . . of any matter in connection with the Protection Efforts," *id.* (2010 Agreement at § 10);
- "Nothing in this Agreement shall be construed to . . . bind or oblige any party . . . to agree to any course of action or to take any specific action with respect to the Protection Efforts," *id.* (2019 Agreement § 13(c));
- "Nothing in this Agreement shall be construed to . . . preclude any Party from asserting any claim or any defense in any action or proceeding," *id.* (2019 Agreement § 13(d)); and
- "Nothing in this Agreement shall be construed to . . . prevent any Counsel from advising its client to prosecute or settle any claim," *id.* (2019 Agreement § 13(f)).

The 2019 Agreement remains in effect. *Id.*

### III.   Legal Standard for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). Defendants, as the non-moving parties, bear the burden of demonstrating the existence of a genuine dispute of material fact.[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Defendants "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matshushita*, 475 U.S. at 586. Because the record here "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and Pace must prevail as a matter of law. *Id.* at 587 (citation omitted).

### IV.   Argument

#### A.   Pace Has a Statutory Right to Bring Unfair Competition Claims

The Lanham Act "mak[es] actionable the deceptive and misleading use of [trade]marks in . . . commerce." *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014) (quoting 15 U.S.C. § 1127). Although Section 32 of the Act allows only the owner of a registered trademark to sue, 15 U.S.C. § 1114(1)(a),

---

[8]Disputed facts that do not resolve or affect the outcome of the litigation do not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Congress did not limit "the remedies given" under the Lanham Act to "owner[s]" alone. *Id.* § 1114(2).[9] Section 43(a) empowers "any person who believes that he or she is likely to be damaged" to sue to prevent uses "likely to cause confusion." *Id.* § 1125(a)(1)(A). A trademark non-owner may sue if (1) their interests fall within the zone of interest protected by the law and (2) their injuries are proximately caused by statutory violations. 572 U.S. at 129-34. "Injury" means "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and . . . that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

This Court already held that Pace's interests "fall squarely within the Lanham Act's zone of protection" and that the damages were "proximately caused by the

---

[9] The issues here and in *OGD* have been significantly muddled by Defendants' counsel's insistence on Section 32 analysis, which is restricted to "registrants," 15 U.S.C. § 1114, "legal representatives, successors and assigns," 15 U.S.C. § 1127, or to exclusive licensees with rights akin to an assignee. In contrast to Section 32 claims (or, for that matter, copyright or patent claims), licensees—both exclusive and nonexclusive—are entitled to bring a claim under Section 43(a). *See e.g.*, *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 159-60 (1st Cir. 1977) (allowing plaintiff's claim to proceed under §43 when plaintiff was not a "registrant" or "exclusive licensee"); *Bd. of Supervisors of LA State Univ. v. Smack Apparel Co.*, 438 F. Supp. 2d 653, 663-64 (E.D. La. 2006), *aff'd*, 550 F.3d 465 (5th Cir. 2008) (same); *Shell Co. v. Los Fraises Serv. Station, Inc.*, 596 F. Supp. 2d 193, 203 (D.P.R. 2008), *aff'd*, 605 F.3d 10 (1st Cir. 2010) (same); *Adidas Am., Inc. v. Athletic Propulsion Labs, LLC*, No. 3:16-cv-00415-HZ, 2016 WL 3896826, at *4 (D. Or. July 18, 2016) (same); *United Nats., Inc. v. LXR Biotech, LLC*, No. 15-14299, 2016 WL 949222, at *2 (E.D. Mich. Mar. 14, 2016) (same).

alleged violations of the Lanham Act." Dkt. 281 at 13. Pace thus has a statutory right

to bring its unfair competition claims. *See, e.g.*, *Unique Sports Prods., Inc. v. Wilson*

*Sporting Goods Co.*, 512 F. Supp. 2d 1318, 1324-25 (N.D. Ga. 2007) ("Plaintiff is thus

'likely to be damaged by [defendant's] act[ions].' ***Nothing more is required*** to assert a

claim under §43(a)(1)(A) of the Lanham Act.") (alterations in original) (emphasis

added)).[10]

### B. Pace's Statutory Rights Are Not Limited or Eliminated by The Distributor Agreement

Once the Court determines that a licensee's statutory cause of action exists

under § 43(a) and *Lexmark*, that right remains – i.e., is implied – unless and until it is

limited or eliminated by an agreement. Accordingly, courts consistently (*OGD* aside)

look to see whether the parties to the contract intended to *negate* the plaintiff's

statutory right (not whether the agreement re-grants a statutory right that already

exists). *See, e.g.*, *Fin. Inv. Co. (Berm.) Ltd. v. Geberit AG*, 165 F.3d 526, 532 (7th. Cir.

1998) ("the express terms of the license **prohibited** any of [the licensees] from

bringing suit in their own capacity" and therefore it "**strips** them of the right to raise a

---

[10]Pace also has standing to bring its related state-law unfair competition claims.
O.C.G.A. § 10-1-373(a); *Future Prof'ls, Inc. v. Darby*, 266 GA 690, 691, 470 S.E.2d
644, 646 (1996) (allowing suit by a party "likely to be damaged" by confusing
trademark use); *see also* O.C.G.A. § 23-2-55; *Kay Jewelry Co. v. Kapiloff*, 204 Ga.
209, 21216, 49 S.E.2d 19, 20, 22-23 (1948) (holding trade-name licensee had standing
under predecessor to § 23-2-55).

§43(a) claim" (emphasis added)); *Hotaling & Co. v. LY Berditchev Corp.*, No. 20-cv-16366, 2021 WL 3783260, at *3-5 (D.N.J. Aug. 26, 2021) (holding that plaintiff can maintain § 43(a) claims absent allegations that it is "contractually **prohibited** from bringing actions under section 1125(a) against third parties" (emphasis added)); *Adidas Am., Inc. v. Athletic Propulsion Labs, LLC*, No. 3:16-cv-00415-HZ, 2016 WL 3896826, at *4 (D. Or. July 18, 2016) (explaining that in the absence of a provision "**forbidding**" licensee from engaging in litigation, nonexclusive licensee may have standing (emphasis added)).[11]

The same analysis was employed by the Eleventh Circuit in *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 710 (11th Cir. 2019). In *Kroma*, the agreement at issue dictated that the *licensor* would "protect [the trademark] properly from any attempts of illegal use, to the best of his knowledge" and "guarantee[] [licensee] against any claims . . . concerning [the mark's] intellectual property rights." *Id.* at 709 (second alteration added).

Applying basic contract-interpretation principles, the court found these provisions "manifest[ed] the [parties'] ability to clearly and precisely delegate and

---

[11]*See also Tr Worldwide Phillyfood, LLC v. Tony Luke, Inc*, No. 16-1185 (RBK/JS), 2017 WL 396539, at *4 (D.N.J. Jan. 30, 2017) (The "Agreement plainly prohibits Plaintiff from taking action against a third party. . . ."); *Visa U.S.A. Inc. v. First Data Corp.*, No. C 02-01786 JSW, 2005 WL 6271242, at *5 (N.D. Cal. Aug. 16, 2005) ("Visa, U.S.A. lacks standing to sue because the license agreement specifically . . . . prohibit[s] Visa, U.S.A. from bringing suit in its own capacity.").

**limit** authority over infringement claims" and demonstrated the parties' "intent for [the licensor] to retain all . . . enforcement rights." *Id.* (citations omitted). Moreover, and significantly, a declaration from the licensor stated: "[M]y company's intention was to . . . retain . . . the exclusive right to protect and enforce the KROMA trademark in any infringement actions." *Kroma*, 920 F.3d at 709.

The court reaffirmed that "a license agreement between two parties *can limit* a licensee's ability to bring a Lanham Act claim" and held – based on the facts in that case – that the parties had "precluded" (i.e., negated) the licensee's right to sue. *Id.* at 709-10. *Kroma* in no way, however, suggests or holds that the agreement's *silence* as to enforcement negates the licensee's statutory rights under §43(a). Such a holding would conflict with longstanding precedent and the very cases the *Kroma* court relied on. *See, e.g., Hako-Med USA*, *Inc. v. Axiom Worldwide, Inc.*, No. 8:06-cv-1790-T-27EAJ, 2006 WL 3755328, at *6-7 (M.D. Fla. Nov. 15, 2006) ("[w]hile the agreement does not grant [licensee] the specific ability to enforce the trademark rights, **neither does it restrict the ability to enforce**") (emphasis added)).

The fact is, licensees do not lose their statutory rights simply by entering into contracts that fail to re-state those same rights. Such a requirement would be unnecessary, inefficient, and prejudicial to licensees. *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (noting waiver occurs only when "a party affirmatively and intentionally relinquishes" a known right), *cert. denied*, No. 21-1468, 2022 WL

- 15 -

4651666 (Oct. 3, 2022); *Trane Co. v. Whitehurst Lassen Constr. Co.*, 881 F.2d 996,

1002-03 (11th Cir. 1989) (reversing holding where "the evidence fail[ed] to support

the district court's legal conclusion that [appellant] clearly and explicitly relinquished"

its statutory right).[12]

In short, Pace's statutory right to sue under §43(a) was never limited or

eliminated by the Distributor Agreement. Factually, this case looks nothing like

*Kroma.* The agreement in *Kroma* contained multiple provisions "relating to the

enforcement," which "indicate[d] that [the licensor] alone ha[d] the exclusive right to

sue for infringement." *Id.* Here, the operative Distributor Agreement has no such

provision.[13] In fact, the Distributor Agreement says nothing about trademark

---

[12]Pace did not relinquish its rights to protect its trade name simply by entering into
the Distributor Agreement in 1981, decades after Pace and its predecessors began
using the Trade Name in the Atlanta market. On the contrary, the Distributor
Agreement expressly acknowledges that Pace owns the Trade Name:

> The Company [ODC] markets its products, to a large extent, through authorized
> 'OVERHEAD DOOR' distributors . . . . [D]istributors use the name
> 'OVERHEAD' as a part of *their corporate trade names* and use the Company's
> marks in selling the Company's products.

*See* SMF ¶ 4 (Distributor Agreement at 1-2) (emphasis added).
[13]Any argument that any *other* agreement between Pace and ODC is at issue here is
a red herring. Pace sued Defendants to protect the "Overhead Door Company of
Atlanta" trade name and its corresponding goodwill. Dkt. 72. The undisputed record
reflects that Pace's goodwill in the "Overhead Door Company of Atlanta" trade name
stretches beyond the counties specifically named in the Distributor Agreement. *See*
Dkt. 84-32 ¶¶ 14-20; Dkt. 82 ¶¶ 4-8, Exs. 2-6. It is hornbook law that a party's rights
in a mark extend past its immediate physical presence to "the area from which
customers are drawn, the coverage of advertising media and the nature of the goods or
services sold." *See* J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair*

enforcement or infringement whatsoever.[14] It simply (1) identifies ODC's marks, and (2) grants Pace the right to use those marks. SMF ¶ 3 (Distributor Agreement § III). Moreover, unlike the licensor in *Kroma*, ODC is in "full support" of Pace's enforcement actions, unquestionably showing ODC did not then—and does not now— "inten[d] . . . to retain all . . . enforcement rights." *Kroma*, 920 F.3d at 709. With no provisions that even impliedly "limit [Pace's] ability to bring a Lanham Act claim," and an unrefuted and unequivocal declaration from ODC confirming its full support of Pace's claims against Defendants, no reasonable jury could conclude that ODC had intended to preclude Pace from enforcing the marks or that Pace has been "strip[ped] . . . of the right to raise a §43(a) claim." *Id.* at 710 (alterations in original) (citation omitted).

Consequently, this Court should find that Pace has the right to bring its claims under § 43(a) and related state law against Defendants.[15]

---

*Competition* § 26:27 (5th ed. 2022). Therefore, Pace may protect consumers from confusion and prevent harm to its reputation and goodwill in "Overhead Door Company of Atlanta" throughout that broader geographic area, regardless whether *other* distributor agreements involving *other* trade names cover some of those same suburban counties.

[14]By contrast, *other* distribution agreements between ODC and Pace *do specifically* address trademark enforcement. *See, e.g.,* Dkt. 141-1, Ex. B-C. This fact demonstrates that ODC is "'ab[le] to clearly and precisely delegate and limit authority' over infringement claims," and that the absence of such provisions in the Atlanta Distributor Agreement is intentional. *Kroma,* 920 F.3d at 709.

[15]A district court's decisions do not bind other district courts or other judges on the

- 17 -

## C.     Pace Has Express and Contractual Authority to Pursue its Claims

Even if this Court were to follow Judge Batten's erroneous interpretation of

*Kroma* and determines that Pace needed affirmative authority from ODC to assert its

unfair competition claims against Defendants, that authority clearly existed when the

Complaint was filed and continues to exist today.[16] The undisputed evidence includes:

(1) express testimony from *the licensor* that Pace is authorized to enforce its rights in

the trade name against Defendants; (2) the parties' contemporaneous conversations and

documentary evidence further confirming that ODC expressly authorized Pace to

assert its claims against Defendants; and (3) record evidence of ODC's ongoing

financial support of the litigation since its inception.

Additional undisputed evidence includes two written common interest

agreements—both of which contemplate *independent* action by Pace to protect the

public from confusingly similar trade names—and a long history of prior conduct

establishing Pace's and ODC's mutual agreement that Pace is well within its rights to

protect its interests in its "Overhead Door Company of Atlanta" trade name throughout

---

same court. *Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022)
(citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)); *Argos USA LLC v. Young*,
No. 1:18-CV-02797-ELR, 2019 WL 4125968, at *6 (N.D. Ga. June 28, 2019).

[16]These facts also compel summary judgment in the event the Court determines that
either the Greater Hall County or the Northeast Georgia Distributor Agreement is
relevant to whether Pace can bring its claims against Defendants. Because while those
two agreements do expressly require Pace to get authorization from ODC, Dkt. 141-1,
Ex. B-C, the undisputed facts prove that Pace got that authorization.

the Greater Atlanta Area.

Any one of these undisputed facts would be sufficient to establish Pace's authority to bring its claims. In combination, the undisputed evidence and facts are insurmountable.

### 1.    ODC's Authorization Moots the "Contractual Authority" Issue

The Distributor Agreement is silent on the issue of enforcement; it lacks either an express grant of, or a restriction on, Pace's statutory enforcement right. Judge Batten interpreted *Kroma* to mean that ODC had withheld from Pace the right to sue the OGD-defendants. *OGD*, 2022 WL 1050692, at 17 n.2 ("The plain interpretation of the license agreement is that [ODC] does not grant these rights to Pace."). But here, and unequivocally, ODC *did grant* these rights to Pace.

ODC was fully aware of Pace's *independent* enforcement efforts against Defendants' unfair competition in Atlanta—starting with Pace's cease-and-desist letter and culminating with Pace filing this lawsuit—and ODC gave its "full support" of those efforts. *See* SMF ¶¶ 17-26; Dkt. 141-3, ¶¶ 6. It is undisputed that ODC never withdrew that authorization. SMF ¶ 27; Dkt. 141-3, ¶ 7. ODC has even funded ███ of Pace's litigation against Defendants. SMF ¶¶ 28-35. No reasonable jury could interpret (i) ODC's sworn "full support," (ii) multiple emails documenting that support, and (iii) years of ongoing financial support of Pace's action against Defendants as anything other than unequivocal authorization and approval.

- 19 -

### 2. Pace and ODC's Subsequent Mutual Agreement Modified the Contract to Grant Pace Enforcement Rights

The record also is undisputed that Pace and ODC mutually agree Pace *is authorized* to assert its unfair competition claims against Defendants. Even if one assumes, *arguendo*, the Distributor Agreement did not by its own terms contemplate Pace asserting such claims, Pace and ODC's mutual agreement—evidenced by decades of consistent conduct and a variety of written communications—subsequently modified the agreement.

The Distributor Agreement specifies Indiana choice of law. SMF ¶ 3 (Distributor Agreement § X).[17] Under Indiana law, a contract may be modified and modifications can be "implied from the conduct of the parties." *Gilliana v. Paniaguas*, 708 N.E.2d 895, 897 (Ind. Ct. App. 1999). "[I]t is well settled that even a contract providing that any modification thereof must be in writing may nevertheless be modified orally.' . . . [and] 'the modification of a contract can be implied from the conduct of the parties." *SWL, L.L.C v. NextGear Cap., Inc.*, 131 N.E.3d 746, 753 (Ind.

---

[17]"Georgia law ordinarily honors choice-of-law provisions . . . ." *Bearden v. E.I. du Pont de Nemours & Co.*, 945 F.3d 1333, 1338 (11th Cir. 2019). The same analysis would apply under Georgia law. "[T]he modification of a contract may be accomplished by a subsequent mutual agreement of all the parties thereto," *Thomas v. Garrett*, 265 Ga. 395, 396, 456 S.E.2d 573, 575 (1995), including "either through the parties' course of conduct, or through oral modifications." *Hanham v. Access Mgmt. Grp. L.P.*, 305 Ga. 414, 417, 825 S.E.2d 217, 220 (2019) (internal citations omitted).

Ct. App. 2019) (internal citations omitted)).[18]

For more than forty years, Pace has acted (without ODC) to enforce its rights in the "Overhead Door Company of Atlanta" trade name, including by sending cease-and-desist letters, negotiating and entering into settlement agreements, and in bringing multiple unfair competition actions in federal court. SMF ¶¶ 14-16. *At no point* in their multi-decade business relationship has ODC asserted that Pace does not have the right to pursue unfair competition claims against competitors in the Greater Atlanta Area. *Id.* ¶ 16. Instead, Pace and ODC have always operated with the mutual understanding that Pace may protect its goodwill and enforce its rights in "Overhead Door Company of Atlanta" against companies engaged in unfair competition.

Pace's and ODC's mutual agreement and understanding is evidenced by two written agreements—one entered years before this litigation began, and another while it was pending. *See* SMF ¶¶ 7, 9. The first, executed in April 2010 by Steve Pascuzzi (President of Pace) and William Schochet (then-General Counsel of ODC), begins by noting that "ODC and [Pace] have a common interest in the protection of these licensed trade names and trademarks within the authorized territories of [Pace] and thus in unfair competition litigation against companies doing business in the Atlanta

---

[18]Under Georgia law, "waiver of [a] written modification requirement in a contract may be established by the parties' course of conduct." *Handex of Fla., Inc. v. Chatham County*, 268 Ga. App. 285, 288, 602 S.E.2d 660, 663 (2004).

metropolitan area." *See* SMF ¶ 7 (2010 Agreement ¶ (A)). The 2010 Agreement

further states that "there is a mutuality of interest in the investigation and institution of

[such litigation]." *Id.* (2010 Agreement § 2). And, while the parties' *interest* in such

litigation is mutual, the 2010 Agreement expressly acknowledges:

- "Each Party intends to remain independent in the formulation and direction of its respective legal strategy" *id.* (2010 Agreement ¶ (D)); and
- "[E]ach respective Party's right to have the sole direction of each such Party's litigation strategy." *Id.* (2010 Agreement ¶ (D)).

Section 8 provides that "each Party reserves the right . . . <u>to act independently of the</u>

<u>other Party in</u> formulating its legal strategy and tactics, responding to the positions of

and <u>litigation brought against competitors</u>, and otherwise pursuing the legal and

business strategy of its choice." *Id.* (2010 Agreement § 8) (emphasis added)).

The 2019 Agreement—entered into *after* Pace had filed both this case and the

*OGD* Case—continues to reflect ODC's and Pace's understanding and agreement that

Pace can engage in "Protection Efforts," which is defined as "protecting [inter alia,

"Overhead Door Company of Atlanta"] within the authorized territories of [Pace] and

in unfair competition litigation against companies doing business within the authorized

territories of [Pace.]." *See* SMF ¶ 9 (Bailey Decl. Ex. 3 (2019 Agreement at 1)). The

2019 Agreement then notes that "the Parties and their Counsel wish to pursue their

<u>separate</u>, but joint, mutual, and common interests in the Protection Efforts." *Id.* The

2019 Agreement also makes clear that it does not "preclude <u>any Party</u> from <u>asserting</u>

any claim or any defense in any action or proceeding." *Id.* (2019 Agreement § 13(d)).

Thus, the written common-interest agreements corroborate the sworn testimony of Pace's and ODC's declarants in this case and clearly reflect the parties' mutual agreement and understanding that "each" of ODC and Pace can "act independently" and prosecute "unfair competition litigation against companies doing business" in Atlanta.

### D.   Material Differentiating Facts Prevent this Court from Giving Judge Batten's Decision in the *OGD* Case Preclusive Effect

"Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX Transp., Inc. v. Bhd. of Maint. of Way Empls.*, 327 F.3d 1309, 1317 (11th. Cir. 2003) (citation omitted). For estoppel to apply, "the issue at stake must be identical to the one involved in the prior litigation." *Id.* (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986)). An issue is not identical, however, if a party can identify "*one material differentiating fact* that would alter the legal inquiry,*" Id* (emphasis added). Though similar, the particular issue at stake in this case is not identical to that before Judge Batten in *OGD* because of multiple "material differentiating fact[s] that would alter the legal inquiry." *Id.*

One material differentiating fact is that Judge Batten's decision was significantly influenced by the presence of a settlement agreement between OGD and ODC. Relying

on the OGD-ODC settlement agreement (to which Pace was *not* a party), Judge Batten

determined that ODC had *released* all claims against OGD, and thus Pace lacked

authority to sue that same defendant. *OGD*, 2022 WL 1050692, at *8. No such

settlement agreement exists in this case (i.e., there is no agreement between ODC and

the *Aaron* Defendants). Quite simply, the *OGD* case turned on whether ODC had

relinquished rights against the *OGD*-defendant such that it could no longer grant Pace

consent to sue. That legal issue is not present here.

A second material differentiating fact is that the issue of whether ODC

authorized Pace to enforce claims against the *Aaron* Defendants—whether through

express consent or through course of conduct—was not before Judge Batten in *OGD*.

*See In re Howard Ave. Station, LLC*, No. 8:20-cv-2780-CEH, 2022 WL 4377506, at

*13 (M.D. Fla. 2022) (rejecting application of issue preclusion where "factual question

of the parties' intent. . . requires different evidence than [prior litigation]").

A third material differentiating fact is that this case has both undisputed

testimonial *and* corroborating documentary evidence of ODC's "full support"—

including ongoing financial support—of Pace's lawsuit against Defendants. Indeed,

Pace submitted sworn statements reflecting ODC's full support and authorization of

this action back in 2020, Dkt. 141-1 to 141-3, and **no** testimony from any Pace witness

or from ODC and **no** documentary evidence contradicts those sworn statements.[19] In

*OGD*, by contrast, Judge Batten discounted declarations from Pace and ODC because,

*inter alia*, (a) they were filed with Pace's reply brief, and (b) he concluded that Pace

witnesses had previously represented "that ODC had *not* authorized" the lawsuit.

*OGD*, 2022 WL 1050692, at *7 n. 4. Neither of these circumstances exists here.

Although the presence of just one of these three "material differentiating facts"

is sufficient to avoid issue preclusion, the presence of all three leaves no doubt. *F.T.C.*

*v. Nat'l Urological Grp, Inc.*, 785 F.3d 477, 482 (11th Cir. 2015) (citation omitted)

(holding district court abused its discretion in applying collateral estoppel where

multiple factual differences existed between the two litigations).

## V.    Conclusion

Pace respectfully requests that the Court hold, as a matter of law, that Pace has

standing to bring its claims in this suit against Defendants. The Court should also reject

the application of issue preclusion because material differentiating facts distinguish

this matter from *OGD*.

---

[19]This Court reopened discovery to provide Defendants an opportunity to probe the
sworn testimony of Pace and ODC (Dkt. 281 at 20-21), but Defendants opted not to
take depositions of any of the declarants.

Dated: October 31, 2022

Respectfully submitted by:

*/s/ R. Charles Henn Jr.*
R. Charles Henn Jr.
Georgia Bar No. 347098
KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
(404) 815-6500
(404) 815-6555 (fax)
chenn@kilpatricktownsend.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

D. H. PACE COMPANY, INC., d/b/a
OVERHEAD DOOR COMPANY OF
ATLANTA,

Plaintiff,

v.

AARON OVERHEAD DOOR
ATLANTA LLC, JEREMY RYAN
LUCIA, and STEPHENIE LUCIA,

Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via the

Court's CMF/ECF system on counsel of record on October 31, 2022.

## LOCAL RULE 7.1D CERTIFICATION

Counsel hereby certifies that the foregoing was prepared in Times New Roman,

14-point font, in accordance with LR 5.1 B, NDGa.

*/s/ R. Charles Henn Jr.*
R. Charles Henn Jr.

- 27 -